IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–00708–WYD–KMT

WYATT T. HANDY, JR.,

     Plaintiff,

v.

OFF. SEAN PASCAL, individual & official capacity, and
DREW BONSALL, individual capacity,

     Defendants.

---

## RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This matter is before the court on Defendant Sean Pascal's "Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) of Defendant Sean Pascal, in his Individual Capacity, and Sean Pascal in His Offical [sic] Capacity, with Authority." (Doc. No. 28, filed June 15, 2011 [Mot.].) Plaintiff filed a response in opposition on July 12, 2011 (Doc. No. 40 [Resp.]) and Defendant Pascal filed a reply in support of his Motion on July 27, 2011 (Doc. No. 46 [Reply].) Accordingly, this matter is ripe for review and recommendation.

### FACTUAL BACKGROUND

     The following facts are taken from Plaintiff's Prisoner Complaint. (Doc. No. 1, filed Mar. 21, 2011 [Compl.]) This suit arises out of Plaintiff's arrest and subsequent prosecution for distribution of a controlled substance.

On May 8, 2007, Defendant Pascal,[1] a narcotics investigator with the Aurora Police Department (hereinafter "APD"), was contacted by a confidential informant, who claimed to have information relating to "a guy selling drugs." (Compl. ¶ 1.)[2] That same day, Defendant Pascal and the confidential informant drove to an apartment building in Aurora, Colorado where the "guy" was allegedly selling drugs. (*Id.* ¶ 6.) Although Plaintiff alleges that he did not live in the suspected unit of that apartment building, when Defendant Pascal drove down the alley, he observed a lone vehicle parked behind the apartment building that came back as registered to Plaintiff. (*Id.* ¶¶ 7-8.)

Based on this information, Defendant Pascal pulled up a photograph of the Plaintiff and showed that single photograph to the confidential informant. (*Id.* ¶ 9.) The confidential informant identified Plaintiff as the "guy" who was selling drugs. (*Id.*)

Thereafter, on May 9, 2007, Defendant Pascal organized a controlled drug buy.[3] (*Id.* ¶ 10.) The confidential informant place a phone call to set up the drug buy. (*Id.* ¶ 11.) That phone call was not received by Plaintiff, but rather an unidentified male named "Pops." (*Id.* ¶ 11.) After the phone call was made, Defendant Pascal, several other members of the APD, and the confidential informant converged on the apartment building in Aurora to complete the drug

---

[1] Defendant Drew Bonsall has not be located for service. Accordingly, all references to Defendant herein apply only to Defendant Officer Sean Pascal.

[2] Because Plaintiff has only sporadically numbered the pages of his Complaint, when necessary, the court refers instead to the page numbers of the document scanned by the Clerk of Court.

[3] The court considers a controlled drug buy to be the purchase or attempted purchase of narcotics under circumstances controlled by law enforcement personnel under surveillance.

2

buy.  (*Id.* ¶ 12.)  The confidential informant was greeted at the door of the suspected apartment unit by "Pops."  (*Id.*)  Inside the apartment, "Pops" sold unidentified drugs to the confidential informant.  (*Id.*)

Based on this controlled drug buy, Defendant Pascal prepared an affidavit for a search warrant for the apartment where the controlled drug buy took place.  (*Id.* ¶ 15.) Plaintiff alleges that the affidavit was "false and misleading at best" as Defendant Pascal allegedly omitted a number of material facts.  (*Id.*)  On May 15, 2007, Defendant Pascal obtained and served the search warrant at the apartment unit where the drugs were purchased during the controlled drug buy.  (*Id.* ¶ 16.)  Defendant Pascal contacted two black males—neither of whom were Plaintiff—and a female.  (*Id.*)  One of the males contacted allegedly fit the description of "Pops." (*Id.*)  During the search, APD officers found drug paraphernalia, but no drugs, and issued a citation to the male fitting the description of "Pops."  (*Id.*)

That same day, May 15, 2007, Plaintiff was arrested at a different location.  (*Id.* ¶ 17.) No drugs or money from the controlled drug buy were found on Plaintiff's person.  Defendant Pascal also allegedly discovered that Plaintiff's cell phone number was not the number called to set up the drug buy.  (*Id.*)  Nevertheless, Plaintiff was allegedly subjected to a "visual" body cavity search, which also failed to turn up any drugs.  (*Id.*)

Later, on July 6, 2007, Defendant Pascal prepared an affidavit for an arrest warrant for Plaintiff, which Plaintiff alleges was "false and misleading at best" insofar as it failed include a number of exculpatory and relevant facts.  (*Id.* ¶ 18.)  On November 15, 2007, the arrest warrant was served and Plaintiff was arrested.  (*Id.* ¶ 19.)  Plaintiff was ultimately charged with

distribution of a schedule II controlled substance, pursuant to Colo. Rev. Stat. § 18-18-405.  (*Id.* ¶ 20.)  At a preliminary hearing held on March 24, 2008, Defendant Pascal allegedly gave unidentified false and misleading testimony concerning the information contained in the search and arrest warrants.  (*Id.* ¶ 21.)  Later, at a motions hearing held on September 26, 2008, Defendant Pascal again allegedly gave unspecified false and misleading testimony as to the facts surrounding the confidential informant's identification of Plaintiff in the photograph lineup.  (*Id.* ¶ 22.)

On April 14, 2009, Plaintiff was acquitted by a jury of the charges against him.  (*Id.* ¶ 24.)  Plaintiff was incarcerated for 17 months from the time of his arrest on November 15, 2007 until he was found not guilty on April 14, 2009.  (*Id.* ¶ 25.)

Out of these facts, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment constitutional rights against Defendant Pascal and the alleged confidential informant, Drew Bonsall.  (Compl. at 11-14.)  Plaintiff also alleges state-law tort claims sounding in malicious prosecution, false arrest and imprisonment, negligence, gross negligence, and intentional infliction of emotional distress against both Defendants.  (*Id.* at 15-19.)

In his Motion, Defendant Pascal seeks to dismiss Plaintiff's claims against him in both his individual and official capacity, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Specifically, Defendant Pascal argues (1) that the statutes of limitations applicable to both Plaintiff's § 1983 claims and state-law claims have expired; (2) that Defendant Pascal is immune from Plaintiff's state-law tort claims because Plaintiff failed to serve notice of his claims, as required by Section

4

24-10-109 of the Colorado Governmental Immunity Act ("CGIA"), within the applicable time frame; (3) that Plaintiff fails to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6); and (4) that Plaintiff lacks standing to contest the search warrant executed in this case.

## LEGAL STANDARDS

*1.* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### 2. *Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### 3.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to

dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation

requires two prongs of analysis. First, the court identifies "the allegations in the complaint that

are not entitled to the assumption of truth," that is, those allegations which are legal conclusion,

bare assertions, or merely conclusory. *Id*. at 1949–51; *Southern Disposal, Inc., v. Texas Waste*,

7

161 F.3d 1259, 1262 (10th Cir. 1998) (a court "need not accept conclusory allegations without supporting factual averments.")  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*,129 S. Ct. at 1949 (citation and internal quotation marks omitted).

## DISCUSSION

As a threshold matter, the court notes that Plaintiff's Complaint is far from a model of clarity.  More specifically, as to his Fourth Amendment and Fourteenth Amendment claims, Plaintiff merely regurgitates essentially the same string of underlying facts, with only conclusory averments as to how these facts violated his Fourth and Fourteenth Amendment rights.  (Compl. at 11–14.)

This lack of clarity becomes even more apparent upon reviewing Plaintiff's Response, where he maintains that his "claims for *Brady* violations, illegal search & seizure & [sic] right to

8

privacy, related to the strip search, and malicious prosecution, grounded in the Fourth & Fourteenth Amendments of the U.S. Constitution, is [sic] not barred by the statute of limitations." (Resp at 3-4.)  Given this lack of parity between Plaintiff's Complaint and his representations in his Response, the court endeavors to construe Plaintiff's Complaint to properly ascertain the nature of his claims.

The court finds that Plaintiff does not mention a *Brady* violation; the case *Brady v. Maryland,* 373 U.S. 83 (1963), or its progeny; nor, most importantly, does he allege any facts that might amount to a *Brady* violation in his Complaint.  *See Douglas v. Workman,* 560 F.3d 1156, 1173 (10th Cir. 2009) (A *Brady* violation has three essential elements: the evidence at issue must be favorable to the accused, that evidence must have been suppressed by the State, and prejudice must have ensued).  As noted above, while the court must hold Plaintiff's allegations to a less stringent standard than a formal pleading drafted by a lawyer, *Haines*, 404 U.S. at 520, the court may not construct a *Brady* violation claim where Plaintiff has not discussed any basis for such a claim, *Drake*, 927 F.2d at 1159.  Additionally, to the extent that Plaintiff maintains in his Response that he has alleged a *Brady* violation claim, the court finds that Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 8(a), which guarantees "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Comms. Network, Inc. v. ESPN, Inc.,* 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd,* 964 F.2d 1022 (10th Cir. 1992).

Although the court finds that Plaintiff's Complaint fails to mention how Defendant Pascal's conduct violated his Fourteenth Amendment right to privacy, the court takes a different

approach with respect to that "claim."  Plaintiff's Response makes clear that Plaintiff was attempting to allege in his Complaint that the strip search conducted on May 15, 2007 violated his right to privacy (Resp. at 3).  However, Plaintiff's Fourteenth Amendment claim makes no reference to that strip search whatsoever, let alone how it violated his right to privacy.  (Compl. at 13-14.)  Nevertheless, because such a claim would clearly be barred by the statute of limitations—a matter to be discussed below—the court assumes, without deciding, that Plaintiff has alleged a § 1983 claim premised on a violation of his Fourteenth Amendment right to privacy.

After liberally construing Plaintiff's Complaint, the court finds that Plaintiff alleges the following claims based on Section 1983.  The court finds that Plaintiff's first claim alleges a false arrest and false imprisonment claim in violation of his Fourth Amendment right to be free from unreasonable searches and seizures based on the facts leading up to his arrest on November 11, 2007 and his imprisonment until April 14, 2009.[4]  (*See* Compl. at 11-12.)  The court finds that Plaintiff's second claim alleges a claim that his Fourteenth Amendment right to due process was violated based on Defendant Pascal's alleged use of an unduly suggestive photo

---

[4] Facially, Plaintiff's first claim also appears to allege a claim that the search of the suspected apartment unit violated his Fourth Amendment rights.  (*See* Compl. at 11.)  However, in his Response, Plaintiff clarifies that he "is not challenging the search of the target premises based on the faulty search warrant affidavit, . . . because as the Defendants [sic] point out, and [Plaintiff] admits, he did not live at the [suspected apartment], nor knew the residents." (Resp. at 16.)  Instead, Plaintiff intends to use Defendant Pascals' allegedly falsified search warrant affidavit "as evidence, in combination with his arrest warrant affidavit, and other evidence, to support his malicious prosecution, *Brady*, and due process claims." (*Id.*)  The court takes Plaintiff's concession at face value and finds that Plaintiff's first claim does not seek to challenge the search of the suspected apartment.

identification procedure.  (*See id.* at 13.)  Additionally, the court finds that the combined effect of Plaintiff's first and second claims for relief—particularly when liberally construed in light of his third claim for relief—is to allege a claim for malicious prosecution in violation of his Fourth and Fourteenth Amendment rights.  (*See id.* at 11-15.)  Finally, as noted above, the court assumes, without deciding, that Plaintiff claims that Defendant Pascal violated his right to privacy under the Fourteenth Amendment.

Fortunately, Plaintiff's state-law tort claims are far more clear.  Plaintiff's third claim for relief alleges a state-law claim for malicious prosecution; his fourth claim alleges a state law-claim for false arrest and false imprisonment; his fifth and sixth claims clearly alleges a state-law claims for negligence and gross negligence, respectively; and his seventh claim alleges a claim for intentional infliction of emotional distress.  (*Id.* at 15-19.)

Having disposed of this preliminary exercise of construing Plaintiff's Complaint, the court turns to Defendant Pascal's arguments that Plaintiff's claims should be dismissed.

**1.      Colorado Governmental Immunity Act**

Defendant Pascal maintains that Plaintiff's state-law tort claims are barred by the CGIA. (Resp. at 9.)  More specifically, Defendant Pascal maintains that because Plaintiff failed to file a notice of claim with the appropriate government entity pursuant to Colo. Rev. Stat. § 24-10-109, the CGIA "immunizes both the City of Aurora and its employees from suit." (Resp. at 9.)

Section 24-10-109(1) of the CGIA states:

Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this

11

> section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24-10-109(1).

"The statutory notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction." *Maestas v. Lujan,* 351 F.3d 1001, 1013-14 (10th Cir. 2003) (internal citation omitted).  Under the CGIA, anyone with a claim against a public entity or its employees "must file a written notice of the claim within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury." *Gallagher v. Bd. of Trs. for the Univ. of N. Colo.*, 54 P.3d 386, 390-91 (Colo. 2002) (internal citations and quotations omitted); *see also Maestas,* 351 F.3d at 1014.  "Complying with the notice of claim is a jurisdictional prerequisite to suit." *Gallagher,* 54 P.3d at 391; *Maestas,* 351 F.3d at 1014.  "Furthermore, section 24-10-109(1) is a non-claim statute, meaning that failure to comply with the 180-day period is an absolute bar to suit." *Gallagher,* 54 P.3d at 393.

The CGIA "notice period is triggered when claimants discover or should have discovered they have been wrongfully injured." *Smith v. Winter,* 934 P.2d 885, 887 (Colo. App. 1997). Here, at the latest, Plaintiff should have discovered that he was injured by the time he was acquitted of the charges against him by the jury on April 14, 2009.  (Compl. ¶ 24); *see also Thompson v. Maryland Cas. Co,* 84 P.3d 496, 504 n.9 (Colo. 2004) (internal citations omitted)

("A cause of action for the tort of malicious prosecution does not arise, mature, or accrue until all essential elements of the tort have materialized, including favorable termination of the malicious action in favor of the victim.")  Indeed, Plaintiff does not allege that Defendant Pascal took any additional injurious actions against him after he was acquitted.

Thus, at the very latest, Plaintiff was required to file a notice of claim within 180 days after his acquittal, or by October 11, 2009.  However, Plaintiff acknowledges that he did not file a notice of claim until March 12, 2011.[5]  (Resp. at 11, 19-22.)

Plaintiff nevertheless maintains that his failure to comply with the notice requirements of the CGIA should only bar his state-law tort claims against Defendant Pascal in his official capacity, and not in his individual capacity.  (Resp. at 11.)  This argument is easily rejected.  To be sure, an early Colorado Supreme Court decision, *Antonopoulos v. Town of Telluride,* 532 P.2d 346, 397 (Colo. 1975), did hold that "the legislature's enactment of the CGIA was without effect on a police officer's vulnerability to liability."  *Whiteman v. El Paso Criminal Justice Center,* 10-cv-02430-WYD-KLM, 2011 WL 2610202, at *11 (D. Colo. July 1, 2011) (unpublished) (citing *Antonopoulos,* 532 P.2d at 397).  However, that case was superceded by statute in 1979. *Id.* (citing *Glaser v. City, County of Denver,* No. 08-cv-02269-LTB-BNB, 2010 WL 936105, at

---

[5] Moreover, even if the notice filed by Plaintiff was timely under the CGIA, it was improperly filed with the Attorney General of the State of Colorado, rather than the City of Aurora.  (Resp. at 19-22.)  Section 24-10-109(3) of the CGIA provides that unless the claim is "against the state or an employee thereof, . . . the notice shall be filed with the governing body of the public entity or the attorney representing the public entity.  Colo. Rev. Stat. § 24-10-109(3).  Here, because Plaintiff's claims are against an employee of the City of Aurora, notice should have been served on the City of Aurora, or its attorney, rather than the Colorado Attorney General.

*6 (D. Colo. Jan. 28, 2010)).  Thus, the current version of the statute provides that written notice under the CGIA must be provided as to the public entity *or its employees*.  *Id.*

Plaintiff also maintains that he has alleged that Defendant Pascal's actions were "willful and wanton," and that under Section 24-10-118(1) of the CGIA, the notice requirement of the CGIA does not apply to willful and wanton acts or omissions.  (*See* Resp. at 10-14.) However, Plaintiff's position contradicts not only the language of Section 24-10-109(1), but also subsection (a) of Section 24-10-118.  Colo. Rev. Stat. § 24-10-109(1); Colo Rev. Stat. § 24-10-118(1)(a) ("Compliance with the provisions of section 24-10-109 . . . shall be required *whether or not* the injury sustained is alleged in the complaint to have occurred as the result of the willful and wanton act of such employee.") (emphasis added).

Accordingly, the court finds that Plaintiff failed to comply with the 180-day time requirement set forth in the CGIA.  Because this provision is "a jurisdictional prerequisite to suit that therefore requires strict compliance with its terms," *Finnie v. Jefferson Cty. Sch. Dist.,* 79 P.3d 1253, 1261 (Colo. 2003), the court finds that Plaintiff's state-law tort claims for malicious prosecution, false arrest and false imprisonment, negligence, gross negligence, and intentional infliction of emotional distress (Claims 3–7) are properly dismissed as jurisdictionally barred under the CGIA.

## 2.    *Statutes of Limitations*

Defendant Pascal seeks dismissal of Plaintiff's § 1983 claims and state-law tort claims on grounds that the applicable statute of limitations have expired.  While, ordinarily, the statute of limitations is an affirmative defense, the issue may be resolved on a Rule 12(b)(6) motion to

dismiss where the application of the limitations period "is apparent on the face of the complaint." *Dummar v. Lummis,* 543 F.3d 614, 619 (10th Cir. 2008); *Aldrich v. McCulloch Props., Inc.* 627 F.2d 1036, 1041 & n.4 (10th Cir. 1980).

### A.    *Plaintiff's § 1983 Claims*

"[L]imitations periods in § 1983 claims are to be determined by reference to the appropriate state statute of limitations." *Hardin v. Straub,* 490 U.S. 536, 539 (1989); *Baker v. Bd. of Regents,* 991 F.2d 628, 632-33 (10th Cir. 1993) ("The length of a statute of limitations period and related questions of tolling and application are governed by state law, unless the tolling rules are inconsistent with federal law or policy").  In Colorado, actions brought under § 1983 are governed by the two-year statute of limitations as codified at Colo. Rev. Stat. § 13–80–102(g).  *Riel v. Reed,* F. Supp. 852, 854-55 (D. Colo. 1991) (citations omitted); Colo. Rev. Stat. § 13-80-102(g) ("The following civil actions . . . shall be commenced within two years after the cause of action accrues, and not thereafter: all actions upon liability created by a federal statute where no period of limitations is provided in said federal statute.").

While state law governs the limitations period applicable to § 1983 claims, federal law specifies when a § 1983 claim accrues.  *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987) (citations omitted); *Baker,* 991 F2d 628, 632 (10th Cir. 1993).  "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'"  *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir. 1998).  "§ 1983 claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when

the actions actually occur." *Kripp v. Luton,* 466 F.3d 1171, 1175 (10th Cir. 2006).  Moreover,

the plaintiff "need not know the full extent of his injuries before the statute of limitations begins

to run." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir.

1994) (citations omitted).  Further, "it is not necessary that the claimant know all of the evidence

ultimately relied on for the cause of action to accrue." *Baker,* 991 F.2d at 632.

Plaintiff filed his Complaint on March 21, 2011.  Thus, for any of his § 1983 claims to

survive, the statute of limitations must not have expired before this date.

Plaintiff has conceded that his § 1983 false arrest and false imprisonment claim is barred

by the applicable statute of limitations.  (Resp. at 3.)  The court agrees.  In *Wallace v. Kato,* 549

U.S. 384, 389-90 (2007), the Supreme Court held that a claim for false arrest/false imprisonment

claim accrues when the victim becomes held pursuant to legal process, "for example [when] he

is bound over by a magistrate or arraigned on charges."  *See also Young v. Davis,* 544 F.3d 1254,

1256-57.  Here, Plaintiff alleges in his Complaint that a preliminary hearing was held on March

24, 2008, and that he was bound over for arraignment on that date.  (Compl. ¶ 21; *id.* at 27.)

Pursuant to the two-year statute of limitations governing § 1983 claims, Plaintiff must have

brought this claim no later than March 24, 2010.  Because his Complaint was filed almost a year

after that date, Plaintiff's Section 1983 false arrest and false imprisonment claim is time-barred.

Similarly, the court finds that Plaintiff's claim that Defendant Pascal violated his

Fourteenth Amendment rights to due process by employing an unduly suggestive photographic

lineup procedure is time-barred.  As a preliminary matter, it is dubious that the Tenth Circuit

would recognize such a claim.  *Compare Sanders v. English,* 950 F.2d 1152 (5th Cir. 1992)

16

(citing *Geter v. Fortenberry,* 882 F.2d 167, 170 (5th Cir. 1989)) (recognizing a Section 1983

claim for the "intentional use of unduly suggestive identification procedures"), *with Pace v. City*

*of Des Moines,* 201 F.3d 1050, 1055 (8th Cir. 2000) (holding that the "jurisprudential doctrine . .

. against the admission of unduly suggestive lineups is only a procedural safeguard, and does not

establish a constitutional right to be free of suggestive lineups").  Nevertheless, even if Plaintiff

could pursue such a claim, it accrued, at the latest, on September 26, 2008, when "a motions

hearing was held[] on the suggestive identification issue. (Compl ¶ 22..)  As such, the two-year

statute of limitations applicable this § 1983 claim expired on September 26, 2010, several

months before Plaintiff's Complaint was filed.  Consequently, Plaintiff's § 1983 claim that his

Fourteenth Amendment due process rights were violated when Defendant Pascal showed the

confidential informant an unduly suggestive photo lineup is likewise time-barred.

Assuming Plaintiff has actually alleged a Fourteenth Amendment right to privacy claim,

this claim accrued on May 15, 2007, when Plaintiff was "subjected to a 'visual' body cavity

search." (Compl ¶ 17; *see* Resp. at 3.)  As such, the statute of limitations expired on May 15,

2009, well before Plaintiff filed his Complaint.  Thus, this claim is similarly time-barred.

However, the parties agree that Plaintiff's § 1983 malicious prosecution claim is not

time-barred. (Resp. at 4; Reply at 1.)  A § 1983 malicious prosecution claim "accrues, at the

earliest, when favorable termination occurs." *Miller v. Spiers,* 339 F. App'x 862,  (10th Cir.

2009) (citing *Mondragon v. Thompson,* 519 F.3d 1078, 1083 (10th Cir. 2008)).  Here, Plaintiff

was acquitted of the charges against him on April 14, 2009. (Compl. ¶ 24.)  Thus, pursuant to

the two-year statute of limitations applicable to § 1983 claims, Colo. Rev. Stat. § 13–80–102(g),

17

Plaintiff had until April 14, 2011 to file his malicious prosecution claim.  Because his Complaint

was filed on March 21, 2011, Plaintiff's § 1983 malicious prosecution claim is timely.

> **B.      State-Law Tort Claims**

Even if Plaintiff's state law tort claims were not jurisdictionally barred under the CGIA,

the court finds that *none* of Plaintiff's state-law claims survive application of the statue of

limitations outlined in Colo. Rev. Stat. § 13-80-103(1)(c).  Plaintiff's state law claims are

governed by a more stringent statute of limitations than the two-year limitations period

applicable to § 1983 claims.  Because Plaintiff concedes that Defendant Pascal is a narcotics

investigator with the APD (Compl. ¶ 1), Colo. Rev. Stat. § 13–80-103(1)(c) provides the statute

of limitations applicable to Plaintiff's state law claims.  That section provides that "*regardless of*

*the theory upon which suit is brought*" all actions against "sheriffs, coroners, polices officers, . . .

or any other law enforcement authority" must be commenced "within one year after the cause of

action accrues, and not thereafter."  Colo. Rev. Stat. § 13-80-103(1)(c) (emphasis added).

The most recent act of any significance alleged in Plaintiff's Complaint is Plaintiff's

acquittal by a jury on April 14, 2009.  *See Thompson*, 84 P.3d at 504 n.9 (internal citations

omitted) ("A cause of action for the tort of malicious prosecution does not arise, mature, or

accrue until all essential elements of the tort have materialized, including favorable termination

of the malicious action in favor of the victim.").  Thus, regardless of the theory underlying

Plaintiff's claims, pursuant to Colo. Rev. Stat. § 13-80-103(1)(c), Plaintiff was required to bring

his state-law tort claims for false arrest and false imprisonment, malicious prosecution,

negligence, gross negligence, and intentional infliction of emotional distress by April 14, 2010.

Plaintiff's Complaint was filed nearly a year after that date, on March 21, 2011.  Accordingly,

the court finds that all of Plaintiff's state law claims are time barred under the one-year statute of

limitations provided by Colo. Rev. Stat. § 13-80-103(1)(c).

**3.**      ***Section 1983 Malicious Prosecution – Failure to State a Claim for Relief***

   Finally, the court will address Plaintiff's remaining Section 1983 malicious prosecution

claim.  Pursuant to Fed R. Civ. P. 12(b)(6), Defendant Pascal maintains that "the allegations in

Plaintiff's Complaint are not plausible on their face" and that there is "no reasonable likelihood

for Plaintiff to muster factual support for his claims."  (Mot. at 10.)  After reciting the applicable

legal standard from *Iqbal,* 129 S.Ct. 1937, and *Twombly,* 550 U.S. 544, Defendant Pascal's

argument for dismissal can be summarized as follows:

>    Defendants have little idea where to begin in responding to Plaintiff's
> Amended [sic] Complaint.
>    In the instant matter the Court should not be required to sift through
> Plaintiff's 38 page Complaint with exhibits in search of a coherent theory for his
> claims.  Furthermore, Defendants should not be forced to undergo the same
> speculative exercise in order to construct an argument to which it must respond.
> Defendants should not have to incur the significant expense and efforts associated
> with defending this action when Plaintiff's claims are conclusory and simply not
> plausible.

(Mot. at 11.)

   It is ironic that Defendant Pascal would label Plaintiff's claims as "conclusory" as that

same description comes to mind in describing Defendant Pascal's Rule 12(b)(6) argument.  At

no point does Defendant Pascal make any attempt to challenge the sufficiency of Plaintiff's

*individual* claims; instead he makes an overarching and conclusory plea, based on the difficulty

of deciphering Plaintiff's Complaint and the expense and effort associated with properly

19

defending this action.  Rule 12(b)(6) does not permit a court to dismiss a complaint on these grounds.  Instead, under Rule 12(b)(6), "[d]efendants have the burden to demonstrate that [the plaintiff] has failed to state a claim 'on which relief could be granted."  *CollectACheck, Inc. v. Check Collection & Recovery, Inc.,* 09-cv-00186-DME-KMT, 2009 WL 1279329, at *3 (D. Colo. May 6, 2009) (unpublished) (citing *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007)).

Moreover, if Defendant Pascal was unable to clearly decipher the nature of Plaintiff's claims—and the court has already acknowledged that Plaintiff's Complaint is far from a model of clarity—the Federal Rules provide a basis to compel Plaintiff to better flesh out his claims. *See* Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.")

Nevertheless, despite Defendant Pascal's lackluster Rule 12(b)(6) argument, the court finds that it has jurisdiction to recommend dismissal of any of Plaintiff's claims *sua sponte*.  28 U.S.C. § 1915(e)(2)(B)(ii) (providing that for complaints filed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.")  For the reasons outlined below, the court finds that Plaintiff's § 1983 malicious prosecution claim fails to state a claim for relief pursuant to Rule 12(b)(6).

The Tenth Circuit "has analogized a § 1983 malicious prosecution claim to the common law tort of malicious prosecution. *McCarthy v. Gilchrist,* --- F.3d ----, 2011 WL 3243008, at *4 (10th Cir. July 14, 2011).

20

> The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Novitsky v. City of Aurora,* 491 F.3d 1244, 1257-58 (10th Cir. 2007).

Even assuming that Plaintiff can establish the common law elements of a malicious prosecution claim, a preliminary hearing, "in which a judge independently listened to testimony, evaluated the credibility of those testifying, reviewed evidence, and concluded that the evidence was sufficient to bind [the plaintiff] over for trial," ordinarily breaks the "chain of causation" with respect to an investigating or arresting officer. *Taylor v. Meacham,* 82 F.3d 1556, 1564 (10th Cir. 1996). Here, in his Complaint, Plaintiff alleges that a preliminary hearing was held on March 24, 2008, and acknowledges that he was bound over for arraignment. (Compl. ¶ 21; *see also id.* at 27.) Thus, this preliminary hearing breaks the "chain of causation" between Defendant Pascal and any allegation that Plaintiff's constitutional rights were violated as a result of malicious prosecution. *Taylor,* 82 F.3d at 1564.

To be sure, *Taylor* may be distinguishable where a plaintiff alleges that "a police officer gave perjured testimony during [the plaintiff's] preliminary hearing." *Crudup v. Schulte,* 12 F. App'x 682, 686 n.2 (10th Cir. 2001). *See also Gregory v. City of Louisville,* 444 F.3d 725, 758 (6th Cir. 2006) (citing *Yancey v. Carroll Cty.,* 876 F.2d 1238, 1243 (6th Cir. 1989)) ("Police officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court.")

21

Here, Plaintiff alleges that Defendant Pascal "gave false & misleading testimony, outlining his false & misleading 'search & arrest' warrant affidavits." (Compl. ¶ 21.)  However, Plaintiff's conclusory "blanket statement" that Defendant Pascal gave false and misleading testimony, "without identifying [] the content of the false testimony" is insufficient to state a plausible claim for relief. *Crudup,* 12 F. App'x at 686 n.2 (citing *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir. 1992) ( "[the] court should dismiss claims which are supported only by vague or conclusory allegations").

Accordingly, the court finds that Plaintiff's §1983 malicious prosecution claim fails to state a claim for relief.  However, the court notes that Plaintiff has filed two motions for leave to amend his Complaint that may potentially cure the deficiencies identified with respect to his malicious prosecution claim.  (*See* Doc. No. 34, filed June 28, 2011; Doc. No. 49, filed Aug. 9, 2011.)[6]  Therefore, the court finds that Plaintiff's recommends that § 1983 malicious prosecution claim be dismissed *without prejudice* so that Plaintiff may seek leave to attempt to cure the

---

[6] On August 23, 2011 (Doc. No. 68), the court denied both of Plaintiff's motions for leave to amend the complaint without prejudice.  That order was not based on the merits of Plaintiff's motions, but rather it addressed the fact that it was not clear whether the second of those two motions (Doc. No. 49) sought to make further amendments to the current operative complaint, or to the proposed amended complaint attached to the earlier motion (Doc. No. 34).

deficiencies identified by the court.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that

Defendant's "Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) of

Defendant Sean Pascal, in his Individual Capacity, and Sean Pascal in His Offical [sic] Capacity,

with Authority" (Doc. No. 28) be **GRANTED,** but that Plaintiff's Section 1983 malicious

prosecution claim be dismissed **<u>without prejudice</u>** so that Plaintiff may be permitted to file a

motion for leave to amend his Complaint to cure the deficiencies noted in this Recommendation.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 29th day of August, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

24